# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Christopher W. Rezos,
    Petitioner,

vs.                                             Case No. 1:06cv713
                                                (Spiegel, S.J.; Hogan, M.J.)

Stuart Hudson,
    Respondent.

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Mansfield Correctional Institution in Mansfield, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his March 16, 2005 convictions in the Butler County, Ohio, Court of Common Pleas upon his entry of guilty pleas to various felony charges. (*See* Doc. 1). This matter is before the Court on the petition (Doc. 1); respondent's return of writ with exhibits (Doc. 5); and petitioner's "Memorandum In Opposition To Respondent's Return Of Writ" (Doc. 6).

### Procedural Background

On August 12, 2004, the Butler County grand jury returned an indictment in Case No. CR04-07-1221 charging petitioner with two counts of attempted murder in violation of Ohio Rev. Code §§ 2903.02(A) and 2923.02(A) (Counts One and Five); two counts of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3) (Counts Two and Four); two counts of felonious assault in violation of Ohio Rev. Code §

2903.11(A) (Counts Three and Six); and one count of aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(2) (Count Seven). A firearm specification was attached to four of these charges (Counts Four through Seven). (Doc. 5, Ex. A).

Over five months later, on January 26, 2005, the Butler County grand jury returned a second indictment in Case No. CR05–01-0141charging petitioner with three additional counts of conspiracy to commit murder in violation of Ohio Rev. Code §§ 2903.02(A) and 2923.01(A)(1). (*Id.,* Ex. B).

On March 16, 2005, petitioner entered guilty pleas to all charges in Case Nos. CR04-07-1221 and CR05-01-0141. At the hearing held on that date, petitioner admitted that the following statement of facts provided by the prosecutor was "an accurate statement of what happened" in terms of establishing the elements of the "crimes being pled to:"

> . . . .[A]s to both these cases on July 2nd, 2004 the defendant, Christopher Rezos, met his estranged wife, Amy Rezos, at the Tri-County Inn located at 10110 Princeton-Glendale Road in Butler County, Ohio. An argument ensued and the defendant attacked Ms. Rezos.
>
> He struck her in the head numerous times with a Magna flashlight and refused to let her leave the motel room. He placed a pillow over her head to suffocate her, and tried to drown her in the bathtub. Ms. Rezos suffered serious injuries as a result of this attack.
>
> On July 26th, 2004 the defendant hid in the back of Ms. Rezos's van, which was located inside her attached garage at 5764 Dayton Trail, Butler County, Ohio.
>
> The defendant was armed with a .32 caliber Smith & Wesson revolver. Ms. Rezos entered her van to drive to work. She backed out of the driveway, and she pulled up to the stop sign at Lesourdsville-West Chester Road.
>
> The defendant appeared behind her with a gun and ordered her to turn right. She would have turned left to drive to work. The defendant then shot her twice in the head. Between January 11th and January 19th, 2005 the defendant planned or aided in planning to murder Amy Rezos, Kevin

>Jones and Sally Jones with another. The defendant enlisted the aid of William Smallwood to hire another person to kill said persons.
>
>The defendant provided physical descriptions, addresses and maps in addition to other information. The defendant agreed to pay for the deaths.

(*Id.,* Ex. S, pp. 14-15, 19-20).[1]

In executed plea entries filed in Case Nos. CR04-07-1221 and CR05-01-0141, petitioner stated that he "agreed to a 30 year [prison] term" as follows: consecutive sentences of nine (9) years on Count One in Case No. CR05-01-0141 and of nine (9) years on Counts One and Five, as well as three (3) years on the specification attached to Count Five, in Case No. CR04-07-1221. (*See id.,* Exs. C, E). Any other sentences were to run concurrently. (*Id.*). On March 17, 2005, petitioner was sentenced in Case Nos. CR04–07-1221 and CR05-01-0141 to an aggregate prison term of thirty (30) years in accordance with the signed plea agreements filed in those cases. (*See id.,* Exs. D, F).[2]

Petitioner did not pursue a timely appeal from his convictions and sentences. On July 19, 2005, over four months after he was sentenced, petitioner filed a *pro se* civil "Complaint . . . for Declaratory Judg[]ment" in the Ross County, Ohio, Court of Common Pleas, claiming that the "bind over journal entry" in Case No. CR04-07-

---

[1]It appears from the record that Counts One through Three in Case No. CR04-07-1221 arose from the incident that occurred on July 2, 2004; Counts Four through Seven with specification in Case No. CR04-07-1221 stem from the July 26, 2004 incident; and that the three conspiracy to commit murder counts in Case No. CR05-01-0141 are based on the subsequent series of events that occurred from January 11 through January 19, 2005. (*See* Doc. 5, Ex. S, pp. 15-19).

[2]Specifically, in Case No CR04-07-1221, petitioner was sentenced to nine (9) year prison terms on Counts One, Two, Four, Five and Seven, seven (7) year prison terms on Counts Three and Six, and three (3) year prison terms on the firearm specifications attached to Counts Four through Seven; all sentences were to run concurrently except for the nine (9) year sentences imposed on Counts One and Five and the three (3) year sentence on the specification attached to Count Five, which were to run consecutively. (*See* Doc. 5, Ex. D). In Case No. CR05-01-0141, petitioner was sentenced to concurrent nine (9) year prison terms on the three conspiracy to commit murder counts, with the sentence imposed on the first count to run consecutively to the sentences imposed in Case No. CR04-07-1221. (*See id.,* Ex. F).

1221 was invalid because the Butler County judge's "stamped signature" on the entry failed to comply with Ohio R. Crim. P. 32(B). (*Id.,* Ex. G). On October 17, 2005, the Ross County court dismissed the complaint, stating its agreement "with defendant that this matter could have been raised on direct appeal and is not properly the subject of a declaratory judgment action." (*Id.,* Ex. I). No appeal was taken by petitioner from this decision.

On November 17, 2005, petitioner next filed a motion for delayed appeal with the Ohio Court of Appeals, Twelfth Appellate District, from his conviction and sentence in Case No. CR04-07-1221. (*Id.,* Ex. J). In this motion, petitioner stated that he would like to raise claims challenging (1) his sentence under *Blakely v. Washington,* 542 U.S. 296 (2004); (2) the jurisdiction of the trial court due to the municipal court's errors in "binding over" the charge of attempted murder to the grand jury despite the fact the initial "sworn complaint" charged petitioner with "attempted aggravated murder;" and (3) the effectiveness of his trial counsel. (*See id.*, pp. 3-4). Petitioner alleged as "good cause" for his delay in filing that he is a "lay person" who "lack[ed] the means to adequately prepare his case;" that his trial counsel failed to forward him copies of pleadings to assist in the preparation of an appeal; and that his trial counsel failed to consult with him about an appeal. (*Id.,* pp. 1-3).

On January 10, 2006, the Ohio Court of Appeals summarily denied petitioner's motion for delayed appeal without opinion. (*Id.,* Ex. K).

Petitioner timely appealed to the Ohio Supreme Court, presenting the following propositions of law in his memorandum in support of jurisdiction and an amended brief:

1. The appellant was denied due process of law when the trial court lacked subject matter jurisdiction contrary to appellant's rights guaranteed under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

2. The appellant was denied the effective assistance of counsel as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

3. The appellant was denied due process of law contrary to the

4

appellant's rights guaranteed under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

4. The trial court committed reversible error and deprived appellant of procedural due process of law under both the United States and Ohio Constitutions when the trial court lacked subject matter jurisdiction over the offenses charged in the direct indictment.

(*Id.,* Exs. L-M).

On June 7, 2006, the Ohio Supreme Court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. N).

Thereafter, on August 7, 2006, petitioner filed a petition for post-conviction relief with the Butler County Common Pleas Court. (*Id.,* Ex. O). Petitioner challenged his sentence in light of the Ohio Supreme Court's determination in *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), that certain provisions of Ohio's sentencing statute were rendered unconstitutional by the Supreme Court's decisions in *Blakely* and *United States v. Booker*, 543 U.S. 220 (2005). (*Id.*). On August 21, 2006, the Butler County court denied the petition because it was not timely filed within the "time limits imposed on the petitioner by . . . statute." (*Id.,* Ex. Q).

Petitioner next filed the instant federal habeas corpus petition in October 2006. He alleges three grounds for relief:

> **Ground One:** . . . Petitioner was denied . . . his due process rights under both the United States and Ohio Constitution[s]. . . . [T]he trial court lacked subject matter jurisdiction over [the] criminal offense due to the lack of a valid Municipal Court bind over journal Entry and [because] the petitioner [was] not . . . arrested and charged for the offense . . . which the preliminary hearing was based upon and [which] the Common Pleas court relied upon to effect a conviction.
>
> **Ground Two:** . . . [T]he petitioner was denied the effective assistance of counsel as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 16

5

of the Ohio Constitution.

**Ground Three:** . . . [T]he petitioner was denied . . . his due process rights under both the United States and the Ohio Constitution[s] when the trial court accepted a plea of guilt to an offense [which was not properly alleged as to] each and every element . . . in the indictment and . . . which was not applicable to petitioner's conduct.

(Doc. 1, Appendix).

In the return of writ, respondent concedes that the petition is not barred from review on statute of limitations grounds. (Doc. 5, Brief, pp. 8-9). Moreover, it appears that petitioner has exhausted all available state court remedies with respect to his grounds for relief. Respondent argues in the return of writ that petitioner has waived his third ground for relief due to his procedural default in the state courts; that petitioner has not alleged a cognizable constitutional claim in his first and third grounds for relief; and that the ineffective assistance of counsel claim alleged in the second ground for relief is devoid of merit. (*Id.*, pp. 9-14).

## OPINION

### A. Petitioner Has Waived His Third Ground For Relief, Because He Failed To Raise It As a Possible Claim Of Error In His Motion For Delayed Appeal To The Ohio Court Of Appeals

In Ground Three of the petition, petitioner contends that he was denied due process when the trial court accepted his plea of guilt to the aggravated burglary charge (Count Seven) in Case No. CR04-07-1221. (Doc. 1, Appendix, pp. 19-21). Petitioner claims that he owned the home he was accused of burglarizing and that the indictment failed to set forth all elements of the offense, because it did "not contain any reference to a theft offense." (*See id.*). Respondent argues in the return of writ that petitioner has waived this claim because he failed to raise it in his motion for delayed appeal to the Ohio Court of Appeals. (Doc. 5, Brief, pp. 10-11).

In recognition of the equal obligation of state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between state and federal courts, a state defendant with federal constitutional claims must fairly

6

present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of the claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, his claims for habeas corpus relief are subject to dismissal with prejudice on the ground that they are waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has pointed out, petitioner committed a procedural default with respect to the claim alleged in Ground Three of the petition because, although he listed in his motion for delayed appeal to the Ohio Court of Appeals the various claims that he would raise if a delayed appeal were granted, he made no mention of any claim specifically challenging his plea to the aggravated burglary charge set forth in Count Seven of the indictment in Case No. CR04-07-1221. (*See* Doc. 5, Ex. J).

It appears that petitioner did assert the claim as a proposition of law in his memorandum in support of jurisdiction on further appeal to the Ohio Supreme Court. (*See id.,* Ex. L). However, because the Ohio Constitution limits the Ohio Supreme Court's appellate jurisdiction to appeals from the Ohio Court of Appeals, *see* Ohio

7

Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966), the Ohio Supreme Court lacked jurisdiction to review any claims that petitioner did not also present to the Ohio Court of Appeals for consideration. *See Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983).

Therefore, the Court concludes that petitioner has waived the claim alleged in Ground Three of the petition absent a showing of cause for his default and prejudice resulting from the alleged error, or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87. Petitioner has not shown "cause" for his default; nor is able to demonstrate "prejudice" given that the nine-year sentence imposed for the aggravated burglary offense was to be served concurrently with the sentences totaling thirty (30) years that were imposed in accordance with the parties' plea agreements on three other counts of attempted murder with specification and conspiracy to commit murder. Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will occur or, in other words, that the alleged constitutional violation "probably resulted in the conviction of one who is actually innocent," if his procedurally-defaulted claim is not addressed on the merits by this Court. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Accordingly, in sum, the Court concludes that the claim alleged in Ground Three of the petition is waived and thus procedurally barred from review in this federal habeas proceeding.

**B. Petitioner Is Not Entitled To Relief Based On The Claims Alleged In Ground One Challenging The Validity Of His Guilty Pleas, Because His Allegations Do Not Give Rise To Jurisdictional Or Constitutional Concerns**

In Ground One of the petition, petitioner alleges that his guilty pleas are invalid because the trial court lacked subject matter jurisdiction as a result of certain errors that occurred in the state municipal court's binding over of the charge of "attempted murder" to the grand jury after petitioner's preliminary hearing in Case No. CR04-07-1221. (Doc. 1, pp. 8-13). Specifically, petitioner asserts that jurisdictional issues arose when the municipal court changed the "attempted aggravated murder" charge set forth in the initial sworn complaint to "attempted murder" at the preliminary

8

hearing. He also contends that the judge's "stamp[ed] facsimile" signature on the bind-over entry rendered the order "void of any lawful force." (*Id.,* p. 11).³

As an initial matter, by pleading guilty, a defendant waives all non-jurisdictional defects in the proceedings. *United States v. Pickett,* 941 F.2d 411, 416 (6th Cir. 1991). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also McMann v. Richardson,* 397 U.S. 759, 768-69, 771 (1970); *Campbell v. Marshall,* 769 F.2d 314, 318-19 (6th Cir. 1985), *cert. denied,* 475 U.S. 1048 (1986). Rather, he may only seek to attack the validity of his guilty plea by showing that under the circumstances, his guilty plea was not intelligently or voluntarily entered. *Tollett,* 411 U.S. at 267; *see also Campbell,* 769 F.2d at 315.

"The principal exception to this rule is the so-called *Blackledge/Menna* principle that 'a plea of guilty to a charge does not waive a claim that–judged on its face–the charge is one which the State may not constitutionally prosecute.'" *United States v. Drew,* 200 F.3d 871, 881 (D.C. Cir. 2000) (quoting *Menna v. New York,* 423 U.S. 61, 62-63 n.2 (1975) (per curiam)); *see also Blackledge v. Perry,* 417 U.S. 21 (1974).⁴ The *Blackledge/Menna* exception for "jurisdictional" claims has not been

---

³Petitioner contends in Ground One that the alleged errors violate both the United States Constitution and Ohio's Constitution. However, because a federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law," this Court is precluded from reviewing petitioner's claim of a state constitutional violation. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

⁴In *Blackledge,* 417 U.S. at 29-31, the Supreme Court held that the petitioner had not, by his guilty plea to a felony charge, waived his right to challenge that conviction based on the meritorious claim of prosecutorial vindictiveness stemming from the State's decision to bring the more serious felony charge against him as a penalty for his having successfully pursued an appeal to obtain a new trial from his first conviction on an indictment charging only a misdemeanor offense; the court reasoned that the claim was not waived because it implicated the "right not to be haled into court at all upon the felony charge" and thus "went to the very power of the State to bring the defendant into court to answer the charge brought against him." In *Menna,* 423 U.S. at 61-62, the Supreme Court extended *Blackledge* to allow review of a double jeopardy claim brought by a defendant who had served a 30-day contempt-of-court civil sentence

extended "beyond the specific claims alleged in those cases" to encompass anything more than that the "applicable statute is unconstitutional or that the indictment has failed to state an offense." *United States v. Montilla,* 870 F.2d 549, 552 (9th Cir. 1989) (quoting *United States v. Broncheau,* 597 F.2d 1260, 1262 n.1 (9th Cir.), *cert. denied,* 444 U.S. 859 (1979)), *amended on other grounds,* 907 F.2d 115 (9th Cir. 1990). In fact, in a later decision, the Supreme Court limited the *Blackledge/Menna* doctrine "to cases in which the judge could determine at the time of accepting the plea, from the face of the indictment or from the record, that the government lacked the power to bring the indictment." *Id.* (citing *United States v. Broce,* 488 U.S. 563, 569, 574-76 (1989) (wherein the Supreme Court held that the *Blackledge/Menna* exception did not apply to allow review of a double jeopardy "one-conspiracy" claim brought by defendants who had pleaded guilty to indictments that on their face described separate conspiracies)).

In this case, the Court concludes that petitioner's allegations of procedural errors during the pre-indictment, preliminary-hearing stage–when the municipal court bound over the charge of "attempted murder" to the grand jury in Case No. CR04-07-1221–did not deprive the grand jury of jurisdiction to indict petitioner on the charges to which he later pleaded guilty, and thus did not fall within the *Blackledge/Menna* exception to the general waiver rule set forth in *Tollett*. There simply is no authority for finding that jurisdiction is lost if the municipal court uses a stamped, but otherwise authorized, signature on a bind-over order. Moreover, the Butler County grand jury was not deprived of jurisdiction to indict petitioner merely because the charge submitted to the grand jury after petitioner's preliminary hearing was for "attempted murder" rather than the more serious "attempted aggravated murder" charge set forth in the initial sworn complaint issued on July 3, 2004.[5] *Cf. Stover v. Coiner*, 290

---

for his failure to testify before a grand jury and who later was also convicted after pleading guilty to a criminal indictment based on the same conduct; in so holding, the Court stated: "We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim *that judged on its face* the charge is one which the State may not constitutionally prosecute." *Id.* at 62.

[5]It is noted that at that point in time, the charge stemmed solely from the first incident that had occurred the preceding day at the Tri-County Inn. The complaint was based on the statement of the victim, who averred that her husband had "purposely attempted to cause her death by hitting her several times in the head area with an unknown object, tried to suffocate her with a pillow, and drown her in the bathtub." (*See* Doc. 1, Appendix, Attachment (A)). The victim apparently suffered serious life-threatening injuries in this incident; therefore, there

10

F.Supp. 852, 855 (N.D. W.Va. 1968) (rejecting claim that petitioner, who had entered a guilty plea, was denied due process by the state court's failure to award him a preliminary hearing as required by state law because (1) the absence of a preliminary hearing, which is not required by the federal Constitution, does not constitute a ground for federal habeas relief "where the petitioner has been properly indicted and fairly convicted, either by plea of guilty or jury trial;" and (2) "one who voluntarily pleads guilty cannot later complain in a habeas corpus hearing of any lack of preliminary hearing, as these possible errors are waived by his plea of guilty"); *see also United States v. Cotton,* 535 U.S. 625, 630-31 (2002) (indictment omissions do not deprive a court of "jurisdiction," or in other words, of "its power to adjudicate a case"); *United States v. Ball*, 12 F.3d 214 (table), No. 93-3743, 1993 WL 524240 (6th Cir. Dec. 15, 1993) (unpublished) (in the absence of a showing that the indictment failed to state an offense ,or of any claim that the defendant did not have notice of the charge against him or was misled by the indictment, the defendant failed to establish a jurisdictional defect which invalidated his guilty plea), *cert. denied,* 511 U.S. 1114 (1994); *Burrows v. Engle,* 545 F.2d 552, 553 (6th Cir. 1976) (guilty plea precluded petitioner from raising a claim based on "allegations of technical defects in the indictment"); *United States v. Quesada-Lerma,* 197 Fed.Appx. 308 (5th Cir. Aug. 28, 2006) (per curiam) (not published in Federal Reporter) (the defendant's guilty plea rendered his indictment claim waived because an "allegedly defective indictment does not deprive a district court of jurisdiction"), *cert. denied,* 127 S.Ct. 1308 (2007); *United States v. Christian,* 184 Fed.Appx. 319, 321 (4th Cir. June 6, 2006) (per curiam) (not published in Federal Reporter) (holding that the defendant's challenges to his arrest and indictment were precluded by his guilty plea), *cert. denied,* 127 S.Ct. 415 (2006).

In any event, even assuming, *arguendo,* petitioner did not waive the claims alleged in Ground One by entering guilty pleas to the charges contained in the indictments, his allegations of error, which involve the manner by which the accused is charged with a crime, do not give rise to a federal constitutional claim. Indeed, it is well settled that there is not even a federal constitutional right to an indictment in state criminal proceedings. *Hurtado v. California,* 110 U.S. 516, 537-38 (1884); *see also Branzburg v. Hayes,* 408 U.S. 665, 688 n.25 (1972); *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir. 1984) ("The law is well settled that the federal guarantee of a grand jury indictment has not been applied to the states. . . . It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule.");

---

appears to have been a justifiable basis for bringing the more serious charge.

11

*Watson v. Jago,* 558 F.2d 330, 337 (6th Cir. 1977). As long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz,* 731 F.2d at 369; *Watson,* 558 F.2d at 338.

Here, petitioner does not allege that the indictments, which were the instruments used to charge him with the crimes, failed to provide sufficient notice to him of the charges against him. Although he contends that he was denied his constitutional right to "know the nature and cause of the accusation against him" when after his preliminary hearing, the charge changed from "attempted aggravated murder" to "attempted murder" (*see* Doc. 1, Appendix, p. 9), certainly by the time he entered his guilty pleas, petitioner had sufficient notice of the nature and substance of the charges contained in the indictments that the Butler County grand jury ultimately issued against him. Moreover, it is clear from the record of the plea hearing that the trial judge ensured that petitioner understood the nature and substance of each of the charges to which he was pleading guilty, and the maximum sentences that could be imposed. (*See* Doc. 5, Ex. S).

Finally, to the extent this Court may consider the alleged errors of state-law asserted by petitioner, it is clear that the Butler County Common Pleas Court had jurisdiction under state law to try, convict and sentence petitioner "upon an indictment regularly issued." *See Harris v. Bagley,* 776 N.E.2d 490 (Ohio 2002) (per curiam) (rejecting state habeas petitioner's claim that his conviction and sentence for rape were void because no proper criminal complaint had ever been filed against him before he was indicted given that petitioner "was convicted and sentenced upon an indictment, and his trial court had the requisite jurisdiction to try, convict, and sentence him on the charged offense"); *Taylor v. Mitchell,* 727 N.E.2d 905, 906 (Ohio 2000) (per curiam) (rejecting for same reason state habeas petitioner's claim that the common pleas court lacked jurisdiction over his kidnapping and aggravated robbery charges due to the fact no criminal complaints were ever filed charging him with those offenses before the indictment was issued).

In cases such as this involving felony charges prosecuted by way of an indictment pursuant to Ohio R. Crim. P. 7(A), the Ohio appellate courts have uniformly held that an accusation by affidavit or complaint is not even necessary for the common pleas court, which by state statute are "courts of general jurisdiction [that] possess subject matter jurisdiction over all crimes and offenses," *State v. Thomas,* No. L-98-1192, 1998 WL 769795, at *1 (Ohio Ct. App. Nov. 6, 1998)

(unpublished), to obtain jurisdiction over the criminal case. *See, e.g., State v. Carpenter,* No. 02CA001, 2001 WL 34048137, at *2 (Ohio Ct. App. Nov. 29, 2002) (unpublished); *State v. Bunnell,* No. L-02-1015, 2002 WL 1305052 (Ohio Ct. App. June 7, 2002) (unpublished); *State v. Lutz,* No. CA2000-09-07112, 2001 WL 1598768, at *2, *3 (Ohio Ct. App. Dec. 17, 2001) (unpublished); *State v. Woodburn,* No. 94 C 82, 1998 WL 336963, at *4 (Ohio Ct. App. June 24, 1998) (unpublished); *State v. Manley,* No. 95-CO-54, 1996 WL 350915, at *2-3 (Ohio Ct. App. June 21, 1996) (unpublished), *appeal dismissed,* 673 N.E.2d 144 (Ohio 1996); *State v. Lutchey,* No. F-95-009, 1996 WL 71011, at *2 (Ohio Ct. App. Feb. 16, 1996) (unpublished).

Accordingly, in sum, petitioner is not entitled to habeas corpus relief with respect to the claims alleged in Ground One challenging the validity of petitioner's guilty pleas based on alleged procedural errors that occurred in the pre-indictment, preliminary-hearing phase of the criminal proceedings, because such errors fail to implicate jurisdictional or constitutional concerns.

### C. Petitioner Is Not Entitled To Habeas Relief Based On The Ineffective Assistance Of Trial Counsel Claim Alleged In Ground Two

In Ground Two of the petition, petitioner claims his trial counsel was constitutionally ineffective because he failed to adequately investigate "the matters and circumstances surrounding the . . . incident that . . . occurred on July 2, 2004" at the Tri-County Inn. (Doc. 1, Appendix, pp. 14-18).[6] Specifically, petitioner contends that if his trial counsel had investigated the incident, he would have discovered the clerk at the inn would have provided testimony corroborating petitioner's version of events–i.e., that he and his wife were "viciously attacked by a black male," who was observed running from the scene. (*Id.*).

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced petitioner. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985) (applying *Strickland*

---

[6]As noted *supra* p. 9 n.3, this Court may only consider petitioner's claim of a federal constitutional violation, not his claim of error under Ohio's Constitution.

13

to guilty plea context). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *See Strickland,* 466 U.S. at 697.

In a case such as this involving a conviction obtained upon entry of guilty pleas, the second, "prejudice" prong of the *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *See Hill,* 474 U.S. at 59. This means that in order to demonstrate prejudice in the guilty plea context, petitioner must show a reasonable probability exists that, but for counsel's alleged error, he would not have pleaded guilty and would have insisted on going to trial. *See id.*

In support of his claim, petitioner has provided the Court with a copy of the "Event Chronology" and "Extended Event Information," apparently obtained pursuant to a "public records request" made by petitioner's mother to the West Chester Police Department. (*See* Doc. 1, Appendix, Attachment (h); Doc. 6, Attachment (b)). The Court is not persuaded by this evidence.

It appears upon review of the records submitted by petitioner that the clerk at the inn made the initial 911 call reporting a "domestic violence" incident that was "in progress," and stated only that "a male is beating a female." (*See* Doc. 1, Appendix, Attachment (h)). Only after the police were dispatched to the scene and discovered "one female down," who was "breathing" but "unresponsive" with a "severe laceration to the back of the head," and a "male covered in blood," were the following remarks added: "appears to be a robbery situation at this time[;] subj adv a m/b came in hit the female and left[;] last seen leaving the room on foot." (*Id.*).

It appears these later remarks were added because they were obtained from petitioner at the scene, as opposed to the clerk, which accords with testimony presented at petitioner's preliminary hearing by a police officer who answered the dispatch sent out in response to the initial 911 call. At that hearing, the officer testified that he spoke with petitioner when he arrived at the scene and that petitioner told him that "a black male about 6 foot 1 came into the room and pushed him down and knocked him out . . . and then when he woke up he found the room like I found it with his wife . . . laying on the floor by the bathtub." (*Id.,* Attachment (f), Tr. 25). The officer said he did not see anyone matching that description in the area. (*Id.*). The officer later testified that he responded to the scene based on a "dispatch . . . to go to Tri-County and it was a domestic in progress." (*Id.,* Attachment (g), Tr. 31).

He said that no mention was made of a "robbery in progress" at that time, and that it was "defendant [who] stated he was robbed." (*Id.,* Tr. 31-32). At that point, the officer "put it out [that] a suspect came into the room and he should be fleeing in ... an unknown vehicle." (*Id.*).

The victim survived the attack and gave her own highly incriminating statement about what happened on July 2, 2004 at the Tri-County Inn. Petitioner's theory of an unknown "black male" committing the crimes on that date is further undermined by the two later incidents that occurred on July 26, 2004 and in January 2005 involving the same victim, which resulted in the additional charges against petitioner of attempted murder, kidnapping, felonious assault and burglary, with specification, as well as the counts charging him with conspiracy to commit murder.

This Court concludes that petitioner's counsel provided reasonable assistance in light of all the circumstances surrounding this case. There was substantial evidence against petitioner on all the charges. However, counsel was able to negotiate a plea bargain that substantially reduced the amount of prison time that petitioner could have received if he had proceeded to trial and were convicted on the charges. In any event, even assuming counsel should have investigated petitioner's theory about the July 2, 2004 incident by speaking with the clerk who made the initial 911 call, petitioner has not shown a reasonable probability exists that he would not have entered the plea agreement if such an investigation had been conducted. It is unclear what, if any, favorable evidence would have been discovered, while on the other hand, petitioner still would have had to answer the victim's own damaging testimony stemming from that particular incident as well as the equally serious charges arising from the two subsequent incidents involving the same victim.

Accordingly, in sum, petitioner is not entitled to habeas relief based the ineffective assistance of trial counsel claim alleged in Ground Two of the petition.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Three of the petition, which this Court has concluded is barred from

15

review on procedural waiver grounds, because under the first prong of the two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[7]  A certificate of appealability also should not issue with respect to the remaining claims alleged in Grounds One and Two of the petition, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on such claims.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  11/14/2007                                           s/Timothy S. Hogan
       cbc                                              Timothy S. Hogan
                                                        United States Magistrate Judge


J:\BRYANCC\2007 habeas orders\06-713denypet.waiv-gp-statelawerr-indictmenterr-iac.wpd

---

[7]Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim for relief in Ground Three of the petition.  *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Christopher W. Rezos,
    Petitioner

    vs                            Case No. 1:06cv713
                                 (Spiegel, S.J.; Hogan, M.J.)

Stuart Hudson,
    Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☐ Agent<br>☐ Addressee |
| | B. Received by ( *Printed Name* ) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Christopher W. Rezos<br>489-357<br>Mansfield Corr. Inst.<br>PO Box 788<br>Mansfield, OH 44901 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | |
| | 4. Restricted Delivery? *(Extra Fee)* | ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7007 1490 0001 0562 5328 | |

PS Form 3811, August 2001     Domestic Return Receipt     102595-01-M-2509

1:06cv713 (Doc. 7)